UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ANTONIO ESPREE,

              Plaintiff,              Case No. 1:14-cv-1185

v.                                       Honorable Gordon J. Quist

SHERRY L. BURT et al.,

              Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Burt, Winger, and the unknown Records Office Supervisor. The Court will serve the complaint against Defendant Mack.

**Discussion**

    I.       Factual allegations

Plaintiff, Antonio Espree, presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF), though the actions about which he complains occurred while he was housed at the Muskegon Correctional Facility (MCF). He sues the following MCF officials: Warden Sherry L. Burt; Resident Unit Manager Jeanine Winger; Classification Director (unknown) Mack; and the unknown Records Office Supervisor.

Plaintiff alleges that, in March 2014, he was housed in the Warden Honor Unit at MCF, which was a special housing unit established in February 2013 for prisoners who had displayed good institutional behavior. Prisoners who were approved for placement in the unit received a number of additional privileges, including extended late-night power, extended kitchen and day-room hours, organized games, extra microwaves, toasters and ironing boards, and extra movie nights. They also could choose the person with whom they shared a cell. (*See* Compl., docket #1, Page ID#14; Ex. H to Compl., docket #1-9, Page ID#57.)

Plaintiff worked as a clerk until March 20, 2014, when he was advised by Officer Jenkins that Defendant Mack had instructed Jenkins to reclassify Plaintiff, because he had not successfully passed the TABE test.[1] Plaintiff had worked as a clerk at other MDOC prisons without passing the test, and he claimed that the requirement violated MDOC policy directive 05.01.100. Officer Jenkins recommended that Plaintiff write to Defendant Burt, because Defendant Mack was imposing an inappropriate burden on Plaintiff. Plaintiff wrote Defendant Burt that day, complaining that he had been required to take the TABE test on two occasions, in order to be classified as a

---

[1] The acronym "TABE" stands for one or more of the Tests of Adult Basic Education offered by CTB/McGraw Hill, an educational assessment provider. *See* http://www.ctb.com/ctb.com/control/main (last visited Dec. 12, 2014).

general clerk. He asserted that such testing was not required under the policy for inmates wishing to work in clerk positions. He also alleged that Defendant Mack had denied him a chance to review the materials or prepare for the test. Plaintiff filed a grievance against Defendant Mack on March 20, 2014, alleging that Mack had violated the prison policy.

On April 14, 2014, Plaintiff was called to Unit 3, where Defendant Winger reviewed Plaintiff's grievance. Winger told Plaintiff that she had researched the policy directives and the Programs Classification Manual, and she had spoken to Deputy Warden Shane Jackson. Winger reported that she could not find any requirement that Plaintiff needed to be TABE-tested in order to work as a general clerk. Defendant Winger admitted that Defendant Mack had acted in violation of the policy. Winger told Plaintiff, "I am sorry and we are going to get this right[."] (Compl., docket #1, Page ID#9). She asked Plaintiff if he wanted to work as a clerk in any specific area. She also asked Plaintiff about the other clerk positions he had held at prior prisons, and the name of his last supervisor. Plaintiff responded that he had worked as an Officer's Clerk and Classification Director Clerk at the Newberry Correctional Facility. At the end of the interview, Defendant Winger found that Plaintiff's grievance was meritorious and ruled that Plaintiff would not be required to take the TABE test for any clerk position other than as a tutor. She told Plaintiff, "I am going to get you a job as a clerk. . . . I am walking over to Defendant Mack['s] office to speak with her after I process your Step I Response on my computer[."] (*Id.*)

On April 24, 204, Defendant Winger called Plaintiff's housing unit and spoke with Officer Thiel. Defendant Winger asked Thiel to call Plaintiff to the desk. When Plaintiff arrived, Winger asked Thiel to ask Plaintiff where he wanted to work as a clerk. Plaintiff responded, "I want[] any clerk position open, and d[o] not have a preference." Defendant Winger then told Plaintiff that "he could go by Unit Officer Thiel." (*Id.* at 10.) The following day, Winger approved

a Security Classification Screen-Review for Plaintiff.  The review scored Plaintiff's confinement level at II and management level at I, and calculated his true security level at Level II.[2]  The review showed that Plaintiff had no unfavorable conduct points and 18 favorable conduct points, resulting in a score of "0," which was the lowest (best) possible score he could have received.  Winger's review resulted in the same score Plaintiff received from his prior review on March 12, 2013.

On April 29, 2014, Officer Thiel ordered Plaintiff to pack up, because he was going to be transferred in the morning.  Plaintiff was sent to KCF in the Upper Peninsula.  Plaintiff alleges that the transfer prevents his family from visiting and prevents him from working with his lawyers on a challenge to his life sentence based on the fact that he was 16 at the time of the murder for which he was convicted.

Plaintiff claims that Defendants transferred him in retaliation for Plaintiff's having filed a grievance on Classification Director Mack, in violation of MDOC policy and the First Amendment.  He seeks declaratory and injunctive relief, together with compensatory and punitive damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

---

[2] In the MDOC, security classifications, from least to most secure, are as follows:  Levels I, II, IV, V, and administrative segregation.  MDOC Policy Directive 05.01.130 ¶ B (effective Nov. 10, 2011).

do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff first argues that he is entitled to relief because Defendants transferred him to KCF, in violation of MDOC policy. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Defendants' failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th

Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). As a consequence, Plaintiff fails to state a § 1983 claim based the alleged violation of MDOC rules.

Plaintiff next argues that Defendants transferred him to KCF in retaliation for filing a grievance against Defendant Mack. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). Plaintiff therefore satisfies the first prong of the *Thaddeus-X* standard.

Plaintiff asserts that his transfer was adverse, under the second prong of *Thaddeus-X*. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks

omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill*, 630 F.3d at 468.

Plaintiff alleges that he was transferred from an honors unit in a Level II facility to a much more restrictive Level II facility, which was operating on high alert because of prisoner management problems. He also contends that the transfer was adverse because he was moved far away from both his family and his lawyers at a time when he was regularly meeting with them, in preparation for filing a challenge to his juvenile-life sentence under *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012). On these facts, the Court concludes that Plaintiff has sufficiently alleged that his transfer was adverse.

With respect to the causation prong, Plaintiff contends that the proximity of time between the resolution of his grievance and his transfer, together with the absence of any misconduct or other possible motivation for the transfer, are sufficient to state a claim. Plaintiff's allegations are sufficient to warrant service of the complaint against Defendant Mack.

However, while Plaintiff contends that Defendants Burt and the unknown Records Office Supervisor authorized his transfer, he fails to allege any fact that would suggest that they were motivated to transfer Plaintiff in retaliation for the filing of a grievance against Defendant

Mack. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Further, Plaintiff makes no allegations that Defendant Winger took any adverse action against him, much less that she did so with a retaliatory motive. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Here, Plaintiff alleges that Winger completed a security classification review. He does not contend, however, that the review was negative in any way or that it was inaccurate. Indeed, by his own allegations, Winger correctly scored Plaintiff at the lowest possible risk for someone convicted on a murder offense.

Further, all of Plaintiff's allegations concerning Defendant Winger indicate that she reviewed his grievance and found it to be meritorious, that she attempted to find him a job, and that she concluded that Defendant Mack had acted improperly. These facts refute any plausible inference that Winger possessed a retaliatory motive. *See Iqbal*, 556 U.S. at 679. Moreover, Plaintiff makes no allegation that Winger, a Resident Unit Manager, took any action or had any influence on the decision to transfer Plaintiff. A defendant cannot be held liable if the defendant is not the decisionmaker taking the alleged adverse action. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001); *Shehee*, 199 F.3d at 301.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Burt, Winger and the unknown Records Office Supervisor will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Mack.

An Order consistent with this Opinion will be entered.


Dated: January 9, 2015                              /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE