UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO ESPREE,

        Plaintiff,

v.

Case No. 1:14-cv-1185

Hon. Gordon J. Quist

SHERRY L. BURT, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendant Julie Mack's motion for summary judgment (docket no. 11).[1]

    **I.**    **Plaintiff's complaint**

Plaintiff filed this action against four officials at the Muskegon Correctional Facility (MCF): Warden Sherry L. Burt; Resident Unit Manager (RUM) Jeanine Winger; Classification Director Julie Mack; and the unknown Records Officer Supervisor. Compl. (docket no. 1, PageID.2).[2] The Court dismissed all defendants except for Classification Director Mack. Plaintiff's allegations against Mack are summarized as follows. In March 2014, he was housed in the Warden Honor Unit at MCF, which was a special housing unit established in February 2013 for prisoners

---

[1] The Court notes that defendant Julie Mack is identified in the complaint as "[First Name Unknown] Mack."

[2] The Court summarized plaintiff's complaint in a previous opinion. *See* Opinion (docket no. 4).

who had displayed good institutional behavior. Prisoners who were approved for placement in the unit received a number of additional privileges.

Plaintiff worked as a clerk until March 20, 2014, when he was advised by Officer Jenkins that Mack had instructed Jenkins to reclassify plaintiff, because he had not successfully passed the TABE [Tests of Adult Basic Education] test. Plaintiff had worked as a clerk at other MDOC prisons without passing the test, and he claimed that the requirement violated MDOC policy directive 05.01.100. Officer Jenkins recommended that plaintiff write to former defendant MCF Warden Burt, because Mack was imposing an inappropriate burden on plaintiff. Plaintiff wrote Warden Burt that day, complaining that he had been required to take the TABE test on two occasions in order to be classified as a general clerk, that such testing was not required under the policy for inmates wanting to work in clerk positions, and that Mack had denied him a chance to review the materials or prepare for the test. Plaintiff then filed a grievance against Mack on March 20, 2014, alleging that Mack had violated the prison policy.

On April 14, 2014, plaintiff was called to review the grievance with former defendant RUM Winger, who told plaintiff that she had researched the policy directives, that she could not find any requirement that plaintiff needed to be TABE-tested in order to work as a general clerk, and that Mack had violated the policy. At the end of the interview, RUM Winger found that plaintiff's grievance was meritorious and ruled that he would not be required to take the TABE test for any clerk position other than as a tutor. RUM Winger told plaintiff that she was going to get him a job as a clerk and would speak to Mack.

On April 24, 2014, RUM Winger consulted with Officer Thiel regarding plaintiff's preference for a clerk position. The following day, Winger approved a Security Classification

Screen-Review for plaintiff. The review resulted in a score of "0," which was the lowest (best) possible score he could have received. Winger's review resulted in the same score plaintiff received from his prior review on March 12, 2013.

On April 29, 2014, Officer Thiel ordered plaintiff to pack up, because he was going to be transferred in the morning. Plaintiff was sent to Kinross Correctional Facility (KCF) in the Upper Peninsula. Plaintiff alleged that the transfer prevents his family from visiting and prevents him from working with his lawyers on a challenge to his life sentence (based on the fact that plaintiff was convicted of murder as a juvenile).

Plaintiff alleged that defendants transferred him in retaliation for plaintiff's having filed a grievance against Mack. His complaint consisted of three counts (identified as "claims"). Two counts, "Claim A" and "Claim B," remain pending against Mack. In "Claim A" plaintiff alleged that Mack committed a "retaliatory transfer" in violation of MDOC Policy Directive 03.02.130 ¶ K, which provides that:

> A grievant shall not be penalized in any way for filing a grievance except as provided in this policy for misusing the grievance process. Staff shall avoid any action that gives the appearance of reprisal for using the grievance process.

Compl. (docket no. 1, PageID.10-12).[3] In "Claim B" plaintiff alleged First Amendment retaliation because Mack transferred him to a different correctional facility. *Id.* at PageID.12-13. Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

**II.     Defendant Mack's motion for summary judgment**

**A.     Legal standard**

---

[3] The Court notes that although plaintiff based this claim on an alleged violation of an MDOC Policy Directive, he also referred to it as retaliation in violation of his First Amendment rights.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Discussion

#### 1. Eleventh Amendment immunity

Plaintiff has sued Mack in both her individual and official capacity. Plaintiff's claims for monetary damages against Mack in her official capacity are barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). Accordingly, defendant's motion for summary judgment on grounds of Eleventh Amendment immunity should be granted.

#### 2. First Amendment retaliation claim

##### a. Legal standard

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). It is axiomatic that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).

The gist of plaintiff's federal claim is that Mack denied him a job assignment by forcing him to take the TABE test in violation of MDOC Policy Directive 05.01.100, that plaintiff engaged in protected conduct by filing a grievance against Mack, and that Mack retaliated against

5

plaintiff by transferring him to a correctional facility in the Upper Peninsula. *See* Compl at PageID.7-10. To prove a First Amendment retaliation claim, plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

      **b.**    **Adverse action**

Mack seeks summary judgment because plaintiff cannot establish an adverse action. The Court agrees. Plaintiff alleged that he was subjected to an adverse action because he was transferred from an honor unit in a Level II facility to a much more restrictive Level II facility, and that "he was moved far away from both his family and his lawyers at a time when he was regularly meeting with them, in preparation for filing a challenge to his juvenile-life sentence." Opinion (docket no. 4, PageID.73).

"[G]enerally, a transfer to another institution 'does not constitute an adverse action since a transfer is merely an ordinary incident of prison life.'" *Jones v. Caruso*, 421 Fed. Appx. 550, 553 (6th Cir. 2011), quoting *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir.2005). Because prisoners are expected to endure more than the average citizen and enjoy no protected right to remain incarcerated in a given correctional facility, a transfer from one prison to another generally will not be considered sufficiently adverse to deter a prisoner of ordinary firmness from engaging in protected conduct. *See Hix. v. Tenn. Department of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir. 2006) (stating that "this Court has held that in the context of a First Amendment retaliation claim, a

6

prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility").

However, the Sixth Circuit has carved out an exception for cases in which foreseeable, negative consequences "inextricably follow" from the transfer. For example, in *Siggers-El* the court found that a transfer would deter a person of ordinary firmness from engaging in protected conduct where the foreseeable consequences of the transfer inhibited the prisoner's ability to access the courts, specifically the loss of his "high paying job that he needed in order to pay his attorney" and the fact that the prisoner's transfer "made it more difficult for his attorney to visit with or represent him because he was moved further away from her." *Id.* at 702. In these exceptional cases, the question of whether a particular retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact. *See Jones*, 421 Fed. Appx. at 553 ("to survive summary judgment on his retaliation claim, Jones needed to make a sufficient showing of the foreseeable, negative consequences that inextricably followed from his transfer") (internal citations, quotation marks and brackets omitted).

This is not an exceptional case involving foreseeable, negative consequences that inextricably followed from plaintiff's transfer. While plaintiff alleged that he was sent to a less desirable prison which was more restrictive and further away from his family, such a transfer is not considered adverse. "A transfer to the general population of another prison is not considered sufficiently adverse to deter a person of ordinary firmness from exercising his First Amendment rights." *Jewell v. Leroux*, 20 Fed. Appx. 375, 378 (6th Cir. 2001). A prisoner's claim that the conditions at another prison are notoriously harsh is not sufficient to create a jury issue on the question of whether his transfer to that prison was an adverse action. *Colvin v. Foy*, No-14-1456

(6th Cir. June 18, 2015) (unpublished order). *See also, Ward v. Dyke*, 58 F.3d 271 (6th Cir.1995) (holding that prison officials could permissibly transfer a prisoner from one Level II facility to another in order to give staff a respite from plaintiff's continuous barrage of grievances).

The driving force behind plaintiff's retaliation claim is that he suffered the adverse action because he was moved far away from his attorney who was assisting plaintiff in seeking relief from his life sentence. In support of his claim, plaintiff relies on the affidavit of his attorney, Richard A. Soble, who stated: that he is representing plaintiff *pro bono* for re-sentencing as a juvenile offender under *Miller v. Alabama*, 132 S. Ct. 2455 (2012); that on May 16, 2013 Attorney Soble visited plaintiff at MCF to discuss plaintiff's case and potential mitigation hearing; that while Soble's office is 168 miles from MCF, it is 313 miles from KCF; and that it was much easier to visit plaintiff at MCF rather than at KCF. *See* Soble Aff. (docket no. 21-1, PageID.215-16). The fact that plaintiff's present place of confinement at KCF is 145 miles further from Attorney Soble's Office than MCF, in and of itself, does not establish an adverse action. While Attorney Soble stated that it was easier to visit plaintiff at MCF, the record reflects that Soble visited plaintiff while he was incarcerated at the Chippewa Correctional Facility (URF) which, like KCF, is located in the Upper Peninsula. *See* URF Visitor Log (Oct. 3, 2012) (docket no. 23-2, PageID.224-225). Attorney Soble's affidavit does not set forth any facts to establish that plaintiff's transfer inhibited his access to the courts or adversely impacted the work being performed by Soble.

Furthermore, a transfer is not an adverse action if it is necessary for operational needs. *See Siggers-El*, 412 F.3d at 701-02 (a transfer is not retaliatory if it is necessary for operational needs such as disciplinary problems); *Ward*, 58 F.3d 271 (prison officials could permissibly transfer a prisoner in order to give staff a respite from plaintiff's continuous barrage of grievances); *Jewell*, 20

Fed. Appx. at 378 ("it is constitutionally permissible for prison officials to transfer an inmate to another prison to give prison staff a respite from his grievances"). Here, plaintiff's transfer order was related to the MDOC's operational needs, i.e., plaintiff was being transferred in a prisoner swap with KCF, which was sending MCF a prisoner deemed to need protection. *See* Transfer Order (docket no. 12-2, PageID.120). Viewing the evidence in the light most favorable to plaintiff, the Court concludes that he did not suffer the requisite adverse action to support a claim of retaliatory transfer. Accordingly, defendant's motion for summary judgment should be granted.[4]

### 3. State law claims

Finally, plaintiff alleged that Mack violated MDOC Policy Directive 03.02.130 ¶ K by penalizing plaintiff for filing a grievance. The Court exercised its supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367, presumably because the claim was intimately related to the alleged § 1983 violation. *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy"). The dismissal of plaintiff's federal claim against Mack, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims against these defendants. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d

---

[4] Because plaintiff did not establish an adverse action sufficient to support a claim for retaliatory transfer, it is unnecessary for the Court to address the issue of causation.

885, 892-893 (6th Cir. 1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, the Court has rejected plaintiff's federal claim. There is no reason to retain supplemental jurisdiction over plaintiff's state law claim. Accordingly, the Court should dismiss the state law claim asserted against defendant Mack.

### III.  Recommendation

For these reasons, I respectfully recommend that defendant Mack's motion for summary judgment (docket no. 11) be **GRANTED**.

I further recommend that plaintiff's state law claim against defendant Mack be **DISMISSED** pursuant to 28 U.S.C. § 1367.

I further recommend that this action be **TERMINATED**.


Dated: February 12, 2016         /s/ Ray Kent
                                 Ray Kent
                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).